

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00044-CR

**ARON SATCHELL,**

                                        **Appellant**

 v.

**THE STATE OF TEXAS,**

                                        **Appellee**

---

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2010-225-C2**

---

## MEMORANDUM OPINION

---

In a seven-count indictment, Appellant Aron Satchell was charged with one count of continuous sexual abuse of a child, three counts of indecency with a child by contact, and three counts of sexual assault of a child. Before trial, the State abandoned one of the indecency-with-a-child counts and one of the allegations in the continuous-sexual-abuse-of-a-child count. Satchell then pleaded not guilty to the remaining charges, and the case was tried to a jury. A jury found Satchell not guilty on the continuous-sexual-abuse-of-a-child count and all three sexual-assault-of-a-child counts

but found him guilty on the remaining two indecency-with-a-child counts and assessed his punishment at thirteen years' confinement for each count. The trial court sentenced Satchell accordingly, ordering that the sentences run consecutively. This appeal ensued. In his sole issue, Satchell contends that the trial court erred in refusing to admit the alleged victim's diary as an exhibit. We will affirm.

The alleged child victim in this case kept a diary. The child testified that a diary was where a person confides her private thoughts; however, nowhere in her diary did she mention anything about Satchell abusing her. More specifically, the child stated that on October 28, 2008, she wrote that she had had an exciting day; she did not say anything about any kind of sexual abuse. In that part of her diary, she generally seemed happy. On October 30, 2008, she wrote basically about school; she wrote nothing about any sexual abuse.[1] On October 31, 2008, she wrote that the day started off "okay" but that later, everything felt wrong because a young man that she was interested in was acting "funny." The child admitted once again that she mentioned nothing in the diary about any kind of sexual abuse. The child stated that she talked about her feelings for the young man in many places in her diary. She never expressed any type of pain and suffering or any type of suicidal thoughts in the diary. She never talked about being hurt by anything Satchell did to her.

On November 1, 2008, the child again wrote nothing about any type of sexual abuse. The following exchange then occurred:

---

[1] The indictment alleged that one of the indecency-with-a-child counts occurred on or about October 30, 2008.

Q.     Okay.  In fact, what it says is, it says, my thoughts have been just wondering about what the next two weeks --

[Prosecutor]:    Your Honor, I'm going to object to him reading it.  If he wants to ask her to read it or ask her if that's what it says.

Q.     (BY [Defense Counsel])  Would you read -- would you read what you wrote November 1st to the jury?

[Prosecutor]:  It's not in evidence.

A.     My thoughts have been --

THE COURT:  I'll sustain the objection.  The document is not in evidence and the witness is prohibited from reading from it at this point in time.

[Defense Counsel]:  Your Honor, at this time I would offer Defense Exhibit No. 1.

(Defendant's Exhibit 1 offered.)

[Prosecutor]: Your Honor, we would object.  That's hearsay.  There's entries from other individuals in there, not just this particular witness.

THE COURT:  I'll sustain the objection.

[Defense Counsel]:  Judge, may I approach?

THE COURT:  For what purpose?

[Defense Counsel]:  Discussing the exhibit.

THE COURT:  No, you may not.  Go ahead.

[Defense Counsel]:  Okay.

Q.     (BY [Defense Counsel])  So -- but, once again, in here you don't in any way talk in any way about any kind of sexual abuse, do you?

A.     No, sir.

Q.     Okay.  Now, there's another entry from November 4th of 2008; is there not?  Can you read that?  Okay.  So, once again, on November 4th of 2008, you don't discuss any kind of sexual abuse, do you?

A.     No, sir.

Q.     In fact, nowhere in this diary at all do you discuss in any way the Defendant is sexually abusing you, do you?

A.     No, sir.

Q.     Okay.  Now, would you please point to me in this diary where someone else has written in the diary?

A.     Yes, sir.

Q.     Where is that?

A.     Right here.

Q.     Okay.  And that's on October 10th of -- I mean, excuse me -- February 10th of 2008?

A.     Yes, sir.

[Defense Counsel]:  Judge, I move to admit this exhibit with that portion redacted from the exhibit.

(Defendant's Exhibit 1 offered.)

[Prosecutor]:  I believe there's other places where other individuals have written in there, Your Honor.

[Defense Counsel]:  If she could show me.

[Prosecutor]:  And it's still all hearsay.

[Defense Counsel]:  It's an exception to the hearsay.

THE COURT:  What exception?

[Defense Counsel]: It's her – it's a statement of her present sense impression of her present state of mind, Judge. It's a prior recorded recollection because she can't remember it. It comes in under about two or three different hearsay exceptions. It's present sense impression, a statement describing or explaining an event or condition made while the then existing mental, emotional, or physical condition. All throughout this diary she's talking about the way she feels and stuff like that. It's throughout the diary, Judge.

THE COURT: The State's objection is sustained.

[Defense Counsel]: Okay.

Q.    (BY [Defense Counsel]) Now I want to -- on November 21st of 2008, you make some notations in your diary; is that correct? Is there anything in there about any sexual abuse from Aron Satchell?

A.    No, sir.

Q.    Okay. Now, you also made notations on November 25th of 2008, correct? You also made notations on May 13th of 2009, correct?

A.    Yes, sir.

Q.    Okay. And on -- there's also prior -- prior to that one, May 13, '08, one of May 13, '09. And anywhere in this diary do you discuss at all any sexual abuse by Aron Satchell?

A.    No, sir.

Assuming, without deciding, that the trial court erred by refusing to admit the alleged child victim's diary as an exhibit, we conclude that any error was harmless. We must disregard non-constitutional errors that do not affect a criminal defendant's "substantial rights." *See* TEX. R. APP. P. 44.2(b). Under this standard, an error is reversible only when it had a substantial and injurious effect or influence in determining the jury's verdict. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). We should not overturn the conviction if we have fair assurance from an

examination of the record as a whole that the error did not influence the jury, or had but slight effect. *Id.* In assessing the likelihood that a jury's decision was adversely affected by the error, we consider the entire record, including any testimony or physical evidence admitted, nature of the evidence supporting the verdict, character of the alleged error, and how it might have been considered in connection with other evidence. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider jury instructions, the State's theory, any defensive theories, closing argument, voir dire, and whether the State emphasized the error. *Id.* at 355-56.

Satchell states in his brief that the predominant evidence against him was the child's testimony and that he was using the child's diary to attack her credibility and persuade the jury that she might not be telling the truth. Satchell argues that the diary was "very probative evidence" because over the seven-month period during which he was alleged to have been molesting the child, the entries in her diary mentioned nothing about sexual abuse but were only about "young girl romance, how she felt about school and friends, *etc.*" Even without admitting the child's diary as evidence, however, Satchell effectively made his point.

During Satchell's cross-examination of the child, he repeatedly questioned her as to whether she wrote in her diary about any kind of sexual abuse, and the child repeatedly admitted that there were no entries in the diary relating to her claims of sexual abuse. The child explained that in many places in the diary, she talked about her feelings for a young man that she was interested in. Additionally, during closing argument, defense counsel argued to the jury:

Okay. Also, I questioned her about the diary, y'all. What is a diary for? Why would a child use a diary? Why do people keep diaries? To record your innermost thoughts, to record what's going on in life that you don't really share with the outside world. In this indictment, y'all, the indecency counts cover acts from October 15 of 2008 through January of 2009. Y'all saw me talk to her about the specific dates of those entries in the diaries all throughout October, all throughout November, all throughout December and all throughout January. There's nothing in the diary -- nothing about any kind of abuse, nothing about being suicidal that she talked about. None of that in that diary at all.

In light of the foregoing, we overrule Satchell's sole issue and affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed August 23, 2012
Do not publish
[CRPM]